## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2015, 8:47 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Iquise Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 13, 2015

Court of Appeals Cause No.
48A04-1406-CR-254

Appeal from the Madison Circuit Court, The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1308-FA-1634

**Najam, Judge.**

## Statement of the Case

[1] Iquise Taylor appeals his sentence after he pleaded guilty but mentally ill to burglary, as a Class A felony; criminal deviate conduct, as a Class B felony; criminal confinement, as a Class C felony; and strangulation, a Class D felony.

Taylor presents two issues for our review, but we address only one dispositive issue, namely, whether Taylor waived his right to appeal his sentence in his plea agreement. We hold that he did, and, therefore, we affirm.

## Facts and Procedural History

During the late-night hours of July 15, 2013, and the early-morning hours of July 16, seventeen-year-old Taylor forcibly entered the Madison County residence of ninety-three-year-old Amelia Rudolf, who had lived there for nearly sixty years. Taylor kicked in the backdoor to Rudolf's home and made his way to Rudolf's bedroom. Once there, Taylor strangled Rudolf and penetrated her rectum with his penis. Taylor's assault broke Rudolf's toe and left "physical abuse marks" on her face. Tr. at 85. The State recovered Taylor's DNA on tissues left in the restroom nearest to Rudolf's bedroom, and anal swabs, collected from Rudolf, revealed the presence of Taylor's DNA in her rectum. Rudolf's DNA was also discovered on a pair of Taylor's shorts, worn by him that night and later found at his home. Taylor was on probation for a prior offense at the time he attacked Rudolf.

On August 26, 2013, the State charged Taylor with burglary, as a Class A felony; criminal deviate conduct, as a Class B felony; criminal confinement, as a Class C felony; and strangulation, a Class D felony. On April 8, 2014, Taylor agreed to plead guilty but mentally ill, in an open plea, to all charges, and the State agreed to recommend concurrent sentences for all charges. The parties agreed to otherwise leave sentencing to the court's discretion. Pursuant to the agreement, if the court sentenced Taylor within the parameters of the plea

agreement Taylor agreed to waive appellate review of any sentence imposed. Specifically, the agreement provided:

> (3) [Taylor] shall plead guilty but mentally ill as charged.

> (4) At the time of taking of the guilty plea [sic], and again at the time of [Taylor's] sentencing, the State will recommend as to the sentence to be imposed as follows:

>> The sentence shall be open to the Court with all counts to run concurrently.

>> All other terms and conditions of the sentencing and probation are to be set by the Court.

> * * *

> (5) [Taylor] understands that the State and Federal Constitutions guarantee all criminal defendants certain rights . . . . [Taylor] further understands that the entry of a guilty plea pursuant to this agreement waives those rights . . . .

> (6) *[Taylor] hereby waives the right to appeal any sentence imposed by the Court, including the right to seek appellate review of the sentence pursuant to Indiana Appellate Rule 7(B), so long as this Court sentences [Taylor] within the terms of this plea agreement.* It is further agreed that the sentence recommended and/or imposed is the appropriate sentence to be served pursuant to this agreement and [Taylor] hereby waives any future request to modify the sentence under I.C.35-38-1-17 [sic].

Appellant's App. at 30-31 (emphasis added).

[4] Taylor's counsel reviewed the evidence against Taylor with him, read the plea agreement to him, and answered any questions Taylor had about its contents or

Taylor's legal rights. Taylor then signed the plea agreement in counsel's presence. Following a plea colloquy, the trial court determined that Taylor understood the charges against him and voluntarily entered his plea. Thus, the court accepted Taylor's plea of guilty but mentally ill and set the case for sentencing.

On May 5, the court sentenced him to an aggregate, concurrent sentence of fifty years. In sentencing Taylor, the court stated:

> [T]he court finds in regards to sentencing mitigating circumstances to be the age of the defendant at the time of the incident. This is somewhat [m]itigated by the facts and circumstances of the case[,] which were particularly heinous and aggravated. The fact that he entered a plea[,] which obviated the time necessary for a trial[,] but he had benefits from entering the plea in that t[h]e sentences for four different counts will be running concurrent instead of consecutive.
>
> Aggravating circumstances would be the defendant's criminal history[,] and it would appear[,] despite the defendant's prior criminal history and attempts of rehabilitation, he's still unable to abide by the law and live a criminal[-]free life. Another aggravating circumstance would be . . . the age of the victim in this case and how the incident has changed the victim[']s life to the extent that it's totally altered her lifestyle, denied her of one of the great [d]reams that she had to live her life in the house . . . that she and her husband built and that she had lived in from that time on.
>
> It is obvious that the defendant is somewhat low functioning and has somewhat limited capacity[,] but this sort of lends itself to the fact that the defendant may not appreciate the criminal law and the wrongfulness of his conduct[,] which logically places innocent citizens in danger and in so based upon the aggravating circumstance[s] outweighing the mitigating circumstances the sentence for Court I[] is fifty years, all executed. Count II, twenty; Count III, eight[;] and

Count IV, three, all concurrent for a fifty[-]year sentence to the Department of Correction[].

Tr. at 114-15 (line breaks added).

[6] Despite the language contained in the plea agreement, after the court sentenced Taylor, it asked whether he would like to appeal his sentence. Taylor's counsel responded affirmatively, and the court appointed counsel. This appeal ensued.

## Discussion and Decision

[7] Taylor contends that the trial court abused its discretion when it sentenced him and that the nature of the offense and his character make his sentence inappropriate. The State, however, responds that Taylor waived his right to appeal in his plea agreement. We agree with the State, and, therefore, we do not reach Taylor's contentions.

[8] In response to the State's waiver argument, Taylor contends that we should not enforce the waiver clause in his plea agreement because it is ambiguous. But, as the State points out, the clause contained in Taylor's guilty plea is similar to that present in *Bowling v. State*, 960 N.E.2d 837, 841 (Ind. Ct. App. 2012), *trans. denied*. There, Bowling entered in a plea agreement that contained a clause that read: "By pleading guilty you have agreed to waive your right to appeal your sentence so long as the Judge sentences you within the terms of your plea agreement." Bowling attempted to appeal her sentence, arguing that the waiver clause in the plea agreement was "confusing and should not be enforced." *Id.* We disagreed and stated:

> A plea agreement in which the trial court has discretion over the length of the sentence is referred to as an open plea. Where a plea agreement leaves sentencing to the trial court's discretion, a defendant is entitled to contest on direct appeal the merits of a trial court's sentencing decision. This includes a plea agreement wherein a defendant agrees to a sentencing cap or range. However, our supreme court has held that <u>a defendant can waive the right to appellate review of his sentence as a part of a written plea agreement as long as such waiver is made knowingly and voluntarily</u>.

*Id.* at 841-42 (emphasis added).

[9] The trial court here found that Taylor made his plea knowingly and voluntarily, and Taylor does not dispute that finding. Further, Taylor's plea agreement is similar to that present in *Bowling*. Paragraph five of Taylor's plea agreement indicates that Taylor understood that, as a defendant, he had several rights available to him under both the federal and Indiana constitutions, and it additionally declares that Taylor knowingly waived those rights by pleading guilty. Although the right to appeal his sentence is not included among those specifically enumerated in paragraph five, in the very next paragraph, Taylor specifically waived his right to appeal "any sentence imposed by the Court, including the right to seek appellate review of the sentence pursuant to Indiana Appellate Rule 7(B), so long as the Court sentence[d him] within the terms of this plea agreement." Appellant's App. at 31. In the same paragraph, Taylor also agreed to "waive[] any future request to modify [his] sentence." *Id.*

[10] Thus, we hold that Taylor knowingly and voluntarily waived his right to appeal his sentence. We cannot agree with Taylor, as he argues, that paragraph six of his plea agreement is ambiguous; that paragraph clearly stated that Taylor

agreed to waive his right to appeal his sentence so long as the court sentenced him within the parameters of the plea agreement. Those parameters dictated that the court could sentence Taylor to any term permitted for any of the charges so long as the court ordered the sentences to be served concurrently. The court did so, and, thus, the waiver clause in the plea agreement is binding upon Taylor.

[11] Neither would we agree that the court's erroneous statement at Taylor's sentencing hearing, where it asked Taylor whether he wished to appeal his sentence, should alter our analysis. Our supreme court has held that erroneous statements made by a trial court at a sentencing hearing, such as the one made here, do not abrogate the language of a plea agreement after it has been accepted by the court and after a defendant has received the benefit of his plea bargain. *See Creech v. State*, 887 N.E.2d 73, 76 (Ind. 2008); *Bowling*, 960 N.E.2d at 842 n.7. The court in *Creech* stated:

> The content and language of the plea agreement itself, as well as the colloquy where necessary, govern the determination as to the validity of the waiver. A specific dialogue with the judge is not a necessary prerequisite to a valid waiver of appeal, if there is other evidence in the record demonstrating a knowing and voluntary waiver.

*Id.* (citations and quotation marks omitted).[1]

---

[1] But "[w]here the trial court inaccurately advised the defendant at the *guilty plea hearing* regarding the right to appeal his sentence, we have found that the written waiver was unenforceable." *Bowling*, 960 N.E.2d at 842 n.7 (emphasis supplied) (citing *Bonilla v. State*, 907 N.E.2d 586, 590 (Ind. Ct. App. 2009), *trans. denied*).

[12]  Here, the court accepted Taylor's plea agreement on April 8, and it sentenced him on May 5. The court made its erroneous statement on May 5 after it had already imposed Taylor's sentence. In other words, the court made the statement after it had accepted Taylor's plea and after Taylor had benefitted from his plea bargain. Thus, we hold that the trial court's erroneous statement is immaterial, and Taylor waived his right to appeal.

[13]  Affirmed.

[14]  Mathias, J., and Bradford, J., concur.